IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAMAR SILVERMAN | * |
| v. | * Civil Case No. WMN-13-1388 |
| COMMISSIONER, SOCIAL SECURITY | * |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions. ECF Nos. 9, 11. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Silverman's motion be denied.

Ms. Silverman applied for Disability Insurance Benefits on January 5, 2010 alleging a disability onset date of March 2, 2009. (Tr. 135-36). Her claim was denied initially on May 4, 2010 and on reconsideration on September 13, 2010. (Tr. 49-51, 57-58). An Administrative Law Judge ("ALJ") held a hearing on February 10, 2012 (Tr. 24-46), and subsequently denied benefits to Ms. Silverman in a written opinion dated April 10, 2012 (Tr. 12-20). The Appeals Council declined review, (Tr. 1-3), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Silverman suffered from the severe impairments of myofascial

pain, degenerative disc disease of the cervical and lumbar spines, carpal tunnel syndrome, and history of right rotator cuff tear status-post operation. (Tr. 14). Despite these impairments, the ALJ determined that Ms. Silverman retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except can use the right upper extremity only occasionally, no overhead lifting and occasional grasping, handling, pushing/pulling, and fingering. The left upper extremity would be unimpaired, can lift up to twenty pounds, but only ten pounds with the right upper extremity." (Tr. 15). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Silverman could perform, and that she was not therefore disabled. (Tr. 19-20).

Ms. Silverman's primary argument on appeal is that the ALJ erroneously assessed her RFC by failing to conduct a function-by-function analysis. Pl.'s Mot. 4-10. As part of her argument, Ms. Silverman raises several sub-arguments. First, she contends that the ALJ failed to include any limitation on her ability to reach in the RFC assessment. *Id.* at 6-7. Second, she argues that the ALJ failed to conclude that her arm impairments were bilateral, despite the fact that her medical evidence of record demonstrated bilateral limitations. *Id.* at 7. Third, Ms. Silverman argues that the ALJ failed to indicate in his RFC assessment whether the limitations imposed for her right upper extremity related to her dominant or non-dominant arm. *Id.* at 9. Finally, as an extension of her RFC argument, Ms. Silverman contends that the questions posed by the ALJ to the VE were erroneous, because they relied on a deficient RFC assessment. *Id.* at 9-10. Each argument lacks merit and is addressed in turn.

Ms. Silverman argues that the ALJ selectively included certain limitations in the RFC assessment, while ignoring others, which were supported by the medical evidence of record.

2

Pl.'s Mot. 6-7. She notes that although the ALJ accorded "great weight" to the opinion of Dr. Hakkarinen, a state agency medical consultant, the ALJ failed to include all of Dr. Hakkarinen's recommended limitations. Specifically, both Dr. Hakkarinen and another state agency medical consultant, Dr. Reddy, indicated that Ms. Silverman was "significantly limited in reaching all directions" with the right arm, and that the limitations were "expected frequently." (Tr. 265, 310). The Social Security Administration defines "frequent" as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 312151, at *6 (Jan. 1, 1983). The RFC assessment limited Ms. Silverman to "occasional" use of her right upper extremity, which is defined as "occurring from very little up to one-third of the time." *Id.* at *5. Thus, the ALJ found that Ms. Silverman can perform work, which requires the use of her right upper extremity *no more than* one-third of the time. This finding is supported by substantial evidence, as it comports with the physical RFC assessments performed by Dr. Hakkarinen and Dr. Reddy. Indeed, the ALJ's RFC assessment is arguably more restrictive than what the medical evidence dictates. The ALJ's RFC assessment included limitations for "occasional grasping, handling, pushing/pulling, and fingering," (Tr. 15), despite findings by both state agency medical consultants that Ms. Silverman had "unlimited" abilities in those areas. *See* (Tr. 265, 310).

Second, Ms. Silverman contends that her medical record evidences impairments of both arms, and that the RFC assessment should have included left-arm restrictions. Pl.'s Mot. 7-9. While Ms. Silverman's record contains some evidence of left-arm impairments, *see* (Tr. 338, 340) (noting "moderate right and mild left median nerve compression at the wrist" and recommending bilateral wrist splints); *see also* (Tr. 271-72) (noting numbness of left and right hands), the record also contains evidence of normal left-arm functioning. In June, 2010, Ms. Silverman had "normal motion in her left shoulder." (Tr. 271, 351). In January, 2011, tinel sign

was positive at the right elbow and wrist, but negative on the left. (Tr. 340). In March, 2011, the left-shoulder was "non-tender" and the range of motion was noted as "full" and "pain-free." (Tr. 336). An ALJ is not required to address every piece of evidence in the record, so long as a reviewing court can determine from the opinion "what the ALJ did and why he did it." *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir. 1999) (citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs,* 137 F.3d 799, 803 (4th Cir. 1998)); *see also Melgarejo v. Astrue,* No. JKS-08-3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (all holding that an ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion). Thus, the ALJ in this case cited to the evidence of adequate left-arm functioning, *see* (Tr. 16) (noting Plaintiff's testimony that she uses her left hand as much as possible to perform chores at home); (Tr. 17) (noting Plaintiff's full range of motion for her left shoulder and elbow, and a grip strength of 5/5), and substantial evidence exists to support his determination that the medical evidence did not warrant a left-arm restriction in the RFC assessment.

Third, Ms. Silverman asserts that the ALJ failed to indicate in the RFC assessment that the limitations imposed upon her right upper-extremity related to her dominant arm. Pl.'s Mot. 9. Ms. Silverman testified at her hearing that she is right-handed. *See* (Tr. 34). She is correct that the ALJ failed to specify in his opinion that her right arm is her dominant arm. However, Ms. Silverman has pointed to no prejudice as a result of this omission. Moreover, it appears that in the VE's calculation of potential jobs available to Ms. Silverman, the VE expressly considered that Ms. Silverman's left arm, and not her right arm, would be used frequently. (Tr. 45) ("And all of those jobs may require reaching, handling, and fingering at a frequent level with the left

upper extremity."). Therefore, the ALJ's failure to articulate her right-arm dominance in the written opinion had no effect on his finding that Ms. Silverman was not disabled during the relevant time frame.

Finally, Ms. Silverman takes issue with the ALJ's hypothetical to the VE. She contends that the hypothetical posed to the VE is incorrect because it was based on a deficient RFC assessment. However, the ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986)). As discussed above, the ALJ's RFC assessment was based on substantial evidence, and the hypothetical corresponded to the RFC assessment. Given that the RFC assessment was not in error, Ms. Silverman's argument fails.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 11); and

2. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 9); and

   CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: February 19, 2014                                              /s/
                                                                              Stephanie A. Gallagher
                                                                              United States Magistrate Judge